[No. 9040.    Department One.    March 27, 1911.]

WELDON SPARKS, *Respondent*, v. BEMIS BROTHERS BAG

COMPANY, *Appellant*.[1]

APPEAL AND ERROR—REVIEW—FINDINGS—PREPONDERANCE OF EVI-
DENCE. In an action for personal injuries tried to the court, in which
there were but two witnesses to the accident, apparently of equal
credit, who testified to entirely different facts, and the record on
appeal fails to show that plaintiff has sustained his case by a pre-
ponderance of the evidence, a judgment for the plaintiff based upon
the trial judge's rule "to resolve doubts in favor of the weak and
lowly and against the strong and powerful," is not conclusive on ap-
peal, but will be reversed and the action dismissed, notwithstanding
plaintiff produced sufficient evidence to sustain the judgment.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered April 1, 1910, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action for personal injuries.
Reversed.

*Farrell, Kane & Stratton,* for appellant.

*Bo Sweeney,* for respondent.

FULLERTON, J.—The respondent brought this action
against the appellant to recover for personal injuries received
by him while in the appellant's employ. The record discloses
that the appellant was engaged in the business of manufactur-
ing bags of various sorts for holding grain, flour, and similar
products. That in the manufacture of these articles it used
a number of machines called presses, capable of doing the
combined work of cutting bags from bolts of cloth, printing
thereon any matter desired, and folding the cut bag into
shapes convenient for handling. The respondent, at the time
of his injury, was employed as an assistant in the operation
of these presses. The appellant also had in its employ at
this time a machinist by the name of Buckner, whose duty it

[1]Reported in 114 Pac. 442.

was to keep the different machines used in and about the appellant's business in working order. The presses were not all self-feeders, and at the time the respondent was injured, the machinist was endeavoring to install on one of them a self-feeding device. To that end he had dismantled the machine and had fixed thereon a self-feeding device, and for some two weeks prior to the injury he had been using such time as he could spare from his routine work in an endeavor to make the feeder operate successfully. During the course of the work it was necessary to occasionally remove and replace various parts of the press, and the machinist would call on some one or another of the workers in the press room to assist in running or replacing the heavier parts.

To the accident itself there were only two witnesses, the respondent and the machinist. The respondent testified that after the machinist had been working for some time on the machine on the morning of the accident, he called on the respondent to come and assist him in threading it. The respondent acceded to the request, and in doing so was obliged to get onto a platform and work somewhat over the press, which was then not in motion. He completed the work, but before he got down from the platform the machinist started the press in motion without giving him any warning, and in consequence he was caught in the uncovered gearing of the machine and suffered the loss of the greater part of his hand.

The machinist's version of the transaction is diametrically opposed to that of the respondent. He testifies that the press at that time was practically adjusted, that he had it threaded with the cloth, and was operating it to ascertain if its different parts were timed correctly, stopping it when he found it necessary to make some change in the adjustment, and starting it again when he had the change completed. This process had been going on for some hours, when he saw the foreman of the shop and the respondent come up behind the press, that he paid no particular attention to them, as he was busily engaged in his own work. Afterwards he noticed the

foreman go away, leaving the respondent alone at the machine; that shortly thereafter he heard respondent cry out, and on stopping the press and going to him, found that he had been injured; that he asked the respondent how it happened, and the respondent said that he did not know. The witness further testified that it was a one man's job to thread the machine, and that he would have no necessity to call on any one to assist him in that work. The action was tried by the court sitting without a jury, and resulted in a judgment in favor of the respondent for the sum demanded in the complaint.

While a number of errors have been assigned, we have found it necessary to notice but one; namely, the contention that the judgment is not sustained by a preponderance of the evidence. It will be remembered that there were but two witnesses to the particular acts which give rise to the controversy, the respondent himself, and the machinist. The respondent, it is clear, testified to facts which, if taken as true, rendered the appellant liable to answer for the injuries suffered by him, assuming, of course, that the machinist was a vice principal of the appellant and not the respondent's fellow servant. It is equally clear also that there is no liability whatsoever if the facts were as testified by the machinist, no matter what view may be taken as to the relation of the machinist to the parties. Looking at the record as it appears in this court, we are unable to find anything which impugns the honesty of either of these witnesses. They both withstood searching cross-examination, and there seems to be no inherent probability that the story of the one is more likely to contain the truth than the story of the other. In the lights we have, it is manifest that the respondent has not sustained his case by a preponderance of the evidence; a burden that was upon him by reason of his having the affirmative of the issue. But we realize that in this class of cases the advantage all lies in being able to meet the witnesses face to face while they are giving their testimony. We realize also that the

trial judge had this advantage, and if it appeared that he had determined the cause on the preponderance of the evidence we would have been inclined to accept his conclusion and to let the finding stand. But the record makes it clear that the trial judge was influenced in his decision by causes other than a preponderance of the evidence. This is shown by his opinion rendered at the conclusion of the testimony when giving his decision, a part of which we quote:

"I am somewhat in doubt, but I have a rule which I have adopted, and I will follow it in this case, that when I am in doubt I will resolve the doubt in favor of the weak and the lowly and against the strong and the powerful. The plaintiff has, however, produced ample evidence to sustain a judgment in his favor."

It is needless, perhaps, for us to say that the foregoing furnishes no criterion by which to determine the rights of litigants in a court of justice. Courts in the administration of justice must not know among the litigants before it either the weak or lowly, or the strong or powerful, but it must decide causes according to the right of the matter, letting the hurt fall on whom it will. Nor it is enough in such a case as this that the plaintiff has produced evidence sufficient to sustain a judgment in his favor, as the burden was upon him to prove his case by a preponderance of the evidence. Since, therefore, the trial court failed to find that the respondent had proved his cause by a preponderance of the evidence, and since we cannot so find from the record in this court, it follows that the judgment appealed from must be reversed, with instructions to enter a judgment for the defendant. It will be so ordered.

GOSE, PARKER, and MOUNT, JJ., concur.